**SPAHR, FERGUSON, and SPARKS, Acting as and Constituting a Majority of The Board of Elections of Greene County, Ohio, Plaintiffs, v. POWERS and DEATHERAGE, Defendants.**

Common Pleas Court, Greene County.

No. 28956. Decided October 19, 1954.

John A. Neatherton, Assistant Prosecuting Attorney, Xenia, for the plaintiffs.

Marcus Shoup, Xenia, for the defendants.

## OPINION

By JOHNSON, J.

This matter is before the Court on the petition of the plaintiffs, Carl C. Spahr, Paul L. Ferguson and John C. Sparks, Acting as and Constituting a Majority of the Board of Elections of Greene County, Ohio, wherein said plaintiffs pray for a declaratory judgment defining the rights of said designated defendants, John R. Powers and Harry O. Deatherage concerning their respective eligibility to vote at the May 4, 1954,

primary election to be held in Greene County, Ohio, the petition alleging that in addition to the defendants, John R. Powers and Harry O Deatherage, there are other persons similarly situated; said petition further prays for a finding of the Court defining the duties of the Board of Elections relative to withdrawing the names of said defendants from the registration lists of said Board and for such other and further relief as may be just and proper. The record discloses personal service of summons was had upon the defendants as required by law, and all proper and necessary parties are before the Court.

On May 3, 1954, the Court directed and ordered, as provided in the entry therein filed, that the question of the legality of the registration of the defendants, John R. Powers and Harry O. Deatherage, and the right of said defendants to vote at the Primary, which question affects the right of other persons similarly situated should be held in abeyance and determined by the Court at a time to be set by the Court subsequent to the May, 1954, primary election, and wherein it was further ordered that said defendants and persons similarly situated as the defendants should be permitted to cast their ballots at said Primary, said order further stipulating that the Board of Elections should require the precinct officials to impound said ballots voted by the defendants as well as persons similarly situated and to keep said ballots separate and apart from the other voted ballots, and that said ballots should remain secret, sealed, and retained in the possession of the Board of Elections pending further orders to the Board of Elections by the Court.

Said petition for declaratory judgment alleges that the defendants, John R. Powers and Harry O. Deatherage, are persons residing in the Village of Yellow Springs and so registered with the Board of Elections * * * that on or about April 27, 1954, separate applications were filed with the Board of Elections for correction of the precinct registration list and challenge of the rights of the defendants to vote; that the challenge in respect to the defendant, John R. Powers, is based on the following grounds:

"Said John Powers is not legally qualified to have his name contained on the registration voter's list of the above designated precinct by virtue of these facts:

"1. His home residence is Rome, New York.

"2. He enrolled in Antioch College, Yellow Springs, Ohio in 1950-1951.

"3. His registration on 9-27-50 as a qualified elector of said precinct was illegal and without authority of law and contrary to and prohibited by the provisions of §4785-33a GC (Now §3503.05 R. C.).

"4. The above applicant for the said stated reasons challenges the right of said John Powers to vote at said precinct and herein applies to and requests said Board of Elections to cause the name of John Powers to be removed from such precinct registration list as required and provided for under §3503.24 R. C."

That the challenge in respect to the defendant, Harry O. Deatherage, is based on the following grounds:

"Said Harry Deatherage is not legally qualified to have his name contained on the registration voter's list of the above designated precinct by virtue of these facts:

"1. His home residence is Beardstown, Illinois.

"2. He enrolled in Antioch College, Yellow Springs, Ohio in 1951-1952.

"3. His registration on 3-26-52 as a qualified elector of said precinct was illegal and without authority of law and contra to and prohibited by the provisions of §4785-33a GC (Now §3503.05 R. C.).

"4. The above applicant for the said stated reasons challenges the right of said Harry Deatherage to vote at said precinct and herein applies to and requests said Board of Elections to cause the name of Harry Deatherage to be removed from such precinct registration list as required and provided for under §3503.24 R. C."

The evidence introduced before the Board of Elections on April 29, 1954, pertaining to the residence of said defendants, the dates of enrollment at Antioch College, the dates of withdrawal or graduation from said College, and the dates of registration with the Board of Elections, relative to the defendant, John R. Powers, disclosed:

"Enrolled in Antioch College, January 27, 1946. Graduated from Antioch College, June 23, 1951. Registered with the Board of Elections, September 27, 1950. Residence prior to enrollment, Utica, New York. Residence since graduation, Yellow Springs, Ohio."

These facts pertaining to the defendant, Harry O. Deatherage, disclosed:

"Enrolled in Antioch College, September 1, 1947. Graduated from Antioch College, June 23, 1951. Registered with the Board of Elections, March 26, 1952. Residence prior to enrollment, Beardstown, Illinois. Residence since graduation, Yellow Springs, Ohio."

In order to determine the qualifications and eligibility of the defendants and those similarly situated to vote in said Primary, based on the facts so presented, it is necessary to resort to the election statutes controlling the same.

At the outset it can be stated generally that the right to vote is not a necessary incident to citizenship; neither is it a natural right, such as the right to personal security, the right to personal liberty, or the right to acquire and enjoy property. Except where restrained by the Constitution, the power of the General Assembly over it is unlimited. The right of suffrage in this state has its source in and is guaranteed by **Sec. 1** of **Art. 5** of the **Constitution**, which provides:

"Every citizen of the United States of the age of twenty-one years, who shall have been a resident of the State one year next preceding the election, and of the County, Township or ward, in which he resides, such time as may be provided by law, shall have the qualifications of an elector, and be entitled to vote at all elections."

The legislature has further provided that the qualifications for voting at a primary election are that the person offering to vote is twenty-one years of age, or will have attained such age on or before the date of the next general election, that he is in other respects a qualified elector, and that he is a member of the party for which such primary election is being held. See §4785-82 GC (3513.19 R. C.).

**Sec. 4785-35 GC (3503.07 R. C.)** in respect to qualifications for registration provides:

"Each person, who will be of the age of twenty-one years or more at the next ensuing November election, who is a citizen of the United States, and who, if he continues to reside in the precinct until the next election, will at that time have fulfilled all the requirements as to length of residence to qualify him as an elector shall, unless otherwise disqualified be entitled to be registered as an elector in such precinct. When once registered in accordance with this act, an elector shall not be required to register again unless his registration is canceled for reasons as hereinafter provided."

However, in addition to the above general requirements necessary to qualify an elector, there is a special statute §4785-33a GC applicable to the voting residence of students attending institutions of learning and which said section (now §3503.05 R. C.) was in force and effect at the time of the respective registrations of the defendants in question. Said section provides:

"If any person shall attend any institution of learning which is located in a county other than the county in which the voting residence of such person was located immediately preceding the time he commences to attend such institution, and if such person while so attending such institution, shall reside in the county in which such institution is located, his voting residence, while so attending such institution, shall be deemed to be at that location in the precinct in which it was located immediately preceding the time he commenced attending such institution."

This statute clearly states that where a person attends any institution of learning located in a County other than the County in which the voting residence of such person was located immediately preceding the time he commences to attend such institution, and where such person while so attending such institution continues to reside where such institution is located, his "voting residence", while so attending such institution, shall be deemed to be at that precinct in which it was located immediately preceding the time he commenced attending such institution.

Do each of the defendants come within the controlling provisions of this special law?

It is conceded the defendant, John R. Powers, enrolled at Antioch College, January 27, 1946; that he graduated therefrom on June 23, 1951; that he registered with the Board of Elections on September 27, 1950; that he was a resident of Utica, N. Y. immediately prior to his enrollment at Antioch College and his residence since graduation has been in Yellow Springs, Ohio.

Under such conceded facts, and by virtue of §4785-33a GC it is clear that the voting residence of said John R. Powers on September 27, 1950, (that being the date of his registration with the Greene County, Ohio, Board of Elections) was in fact, Utica, N. Y. Since he, at that time, was ineligible for purpose of registration with the Greene County Board of Elections, such registration so made was contrary to law, and accordingly the challenge so made on April 27, 1954, to require the Board of Elections to cause the name of said John R. Powers to be removed from such precinct registration list as entered on September 27, 1950, is well taken, and it is the order of the Court that said registration of John R. Powers,

individually, as well as those persons similarly situated, be removed from the precinct registration list by the said Board of Elections.

In respect to Harry O. Deatherage, the agreed facts disclose that he enrolled at Antioch College September 1, 1947; graduated June 23, 1951; registered with the Board of Elections of Greene County, Ohio, on March 26, 1952; that prior to his enrollment he was a resident of Beardstown, Illinois, and since graduating has been a resident of Yellow Springs, Ohio.

The variance in the facts of Deatherage as distinguished from the case of Powers is evidenced from the fact the former graduated from Antioch College on June 23, 1951, and registered with the Board of Elections on March 26, 1952. If Deatherage, by virtue of Sec. 4785-33a, could not qualify for registration during his enrollment at college, when, then, would he be eligible to become registered as an elector of Yellow Springs? The answer to this inquiry must be ascertained by reference to the general statutes defining the residence qualifications of electors.

In the recent case of **State ex rel Ehring v. Bliss et, Board of Elections of Summit County, 155 Oh St 99,** a decision rendered March 21, 1951, the second syllabus of the same provides:

"Under the provisions of amended §4785-71 GC, the terms 'voting residence' and 'postoffice address' are not synonymous."

Syl. 3. "Under the provisions of §4785-3 GC, an elector or qualified elector is a person having the qualifications provided by law to entitle him to vote."

For the same reasons above heretofore stated, the voting residence of defendant Deatherage on June 23, 1951, (that being the date of his graduation) was necessarily, Beardstown, Illinois. The record discloses, however, he registered at Yellow Springs on March 26, 1952, the period being approximately nine calendar months succeeding his graduation. If he was so disqualified until June 23, 1951, was he required to obtain one year's residence immediately thereafter, in Ohio, before being eligible to register?

Sec. 4785-30 GC provides:

"No person shall be permitted to vote at any election unless he shall have been a resident of the State one year, of the County forty days and of the voting precinct forty days next preceding the election at which he offers to vote * * *."

Deatherage, for purpose of procuring an actual **voting residence** in Ohio would have had to reside in the State for one year and in the County and voting precinct forty days. Under the provisions of §4785-33a GC his voting residence as of June 23, 1951, was Beardstown, Illinois, and it logically follows that for the purpose of obtaining the one year's required voting residence in Ohio, such period would not have run until June 23, 1952.

The Secretary of the State of Ohio in a ruling entered in 1952 held:

"One must have been a resident of the State one year at the time of the next election in order to register prior to such election. Therefore, if a person will not have been a resident of the State for one year until June, 1952, such person may not register prior to the primary election, nor may such person vote in the primary election." - Annotation to §3503.07 R. C. (Baldwin's Ohio Code).

This ruling seems to have full application to the facts in the Deatherage case.

The election laws of this State are enactments of the legislative body, and where the provisions are clear and unmistakable it is the duty of the Court to uphold the same even though such conclusion in effect sometimes works an unsatisfactory result. In interpreting statutes of plain and unambiguous terms not susceptible of more than one construction, the Courts should not be concerned with the consequences, but should enforce the law as they find it. If the consequences of such statutes are objectionable, they may only be avoided by a change of the law itself, to be effected by legislative, not judicial action.

The controlling provisions of said §4785-33a GC apply to every institution of learning in the State and undoubtedly the purpose of its enactment was to provide uniform voting regulations applicable to persons attending such institutions within this State.

It is, therefore, the further judgment of the Court that the voting registration of said defendant, Harry O. Deatherage, as entered on March 26, 1952, as well as the names of those similarly situated, be removed from the respective precinct registration lists, and that any ballots so cast by such parties in question, in present custody of the Board of Elections, be destroyed.